86 P.3d 810 (2004)
In re the Matter of the Detention of Andre Brigham YOUNG.
Andre Brigham Young, Appellant,
v.
State of Washington, Respondent.
No. 51468-7-I.
Court of Appeals of Washington, Division 1.
March 22, 2004.
As Amended on Denial of Reconsideration May 7, 2004.
Dennis Paul Carroll, Public Defender, Seattle, WA, for Appellant.
Jeffrey C. Dernbach, Seattle, WA, for Respondent.
AGID, J.
The trial court terminated Andre Brigham Young's annual show cause hearing under RCW 71.09.090 without further proceedings, ruling that Young had not presented prima facie evidence that his condition had so changed that he was no longer a sexually violent predator (SVP). We granted discretionary review to decide whether the trial court erred by improperly weighing the evidence and by failing to order a hearing on his SVP status. Because the actuarial risk assessment evidence Young presented, diagnostic tools that were not available when he was committed in 1991, makes a prima facie showing that he is no longer an SVP, we reverse and remand for an evidentiary hearing on the issue.

FACTS
Young was committed in March 1991 as an SVP under chapter 71.09 RCW and has been held in the Special Commitment Center (SCC) since his commitment. Under the statute, the court must review his status annually. In 2001, Young retained Dr. Howard *811 Barbaree, a licensed psychologist with extensive experience evaluating and treating individuals with sexual deviancy problems, to assess whether his condition has changed so that he no longer meets the criteria for an SVP. Dr. Barbaree's report opined that Young is no longer an SVP because, having reached the age of 61, his risk of reoffending is reduced to zero.
On November 30, 2001, the trial court held Young's annual show cause hearing at which he submitted Dr. Barbaree's report as evidence that he was no longer an SVP. The trial court concluded that the evidence contained in the report was insufficient to establish that he meets the statutory standard for a new hearing because it was not a complete assessment of Young's condition.[1] It therefore denied his request for a new commitment hearing under RCW 71.09.090.
In 2002, Dr. Barbaree updated his assessment of Young to address some of the concerns the trial court expressed in 2001, including personally interviewing Young and reviewing all SCC psychological reports about his condition. Young presented the updated report at his 2002 show cause hearing, but the trial court again denied him a full evidentiary hearing, finding he had not established probable cause that his condition had "so changed" that he no longer met the definition of an SVP. Young appeals the 2002 determination.

ANALYSIS
Under RCW 71.09.090(2)(c), a person committed as an SVP has a right to an annual review and show cause hearing on his status.
If the court at the show cause hearing determines that either: (i) The state has failed to present prima facie evidence that the committed person continues to meet the definition of a sexually violent predator and that no proposed less restrictive alternative is in the best interest of the person and conditions cannot be imposed that would adequately protect the community; or (ii) probable cause exists to believe that the person's condition has so changed that: (A) The person no longer meets the definition of a sexually violent predator; or (B) release to a less restrictive alternative would be in the best interest of the person and conditions can be imposed that would adequately protect the community, then the court shall set a hearing on either or both issues.[[2]]
In In re Detention of Petersen, which was decided after the annual hearing at issue here, the Washington Supreme Court held that the burden of proof at a show cause hearing under RCW 71.09.090(2) is on the State.[3] The petitioner can establish probable cause by making a prima facie showing. At this stage of the proceedings, the trial court must not weigh the evidence.[4] The Petersen court discussed two situations in which a trial court may determine there is probable cause to proceed to a new trial. The first arises when the State fails to present prima facie evidence that the detainee continues to meet the definition of an SVP. In the second situation, the detainee may present
his own evidence which, if believed, would show (1) the prisoner no longer suffers from a mental abnormality or personality disorder, i.e., the prisoner has "so changed," or (2) if the prisoner still suffers from a mental abnormality or personality disorder, the mental abnormality or personality disorder would not likely cause the prisoner to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative or unconditionally discharged.... [[5]]
A trial court's decision about whether evidence meets the probable cause standard is reviewed de novo.[6]
*812 Young claims that Dr. Barbaree's report and accompanying declaration was sufficient evidence under chapter 71.09 RCW and Petersen to require the trial court to order a new commitment hearing. The State argues that Dr. Barbaree's report and accompanying declaration do not support Young's contention that he has "so changed" that he is no longer an SVP because, based on the actuarial studies on which Dr. Barbaree relies, Young was not an SVP in 1991 when he was originally committed and therefore he has not changed as required by the statute.[7] It also asserts that, other than Young's being one year older, there are no facts supporting a showing that his condition has changed. Finally, the State contends Dr. Barbaree's opinion is conclusory. We conclude the court erred by failing to order a new hearing under RCW 71.09.090(2)(c)(ii)(A) and Petersen for two reasons.

I. Weighing the Evidence
First, the trial court in this case appears to have weighed the evidence presented, rather than simply determining whether Young presented evidence that his condition had changed sufficiently to meet the statutory standard. In In re Thorell, the companion case to Petersen, the Supreme Court concluded the trial court erred when it weighed evidence in determining probable cause at an annual show cause hearing.[8] Thorell presented expert testimony that a particular medication regime reduced his risk to reoffend. Because of the reduced risk and other aspects of his evaluation, the expert recommended that Thorell be released to less restrictive alternative treatment. The trial court denied Thorell an evidentiary hearing, stating that the expert's opinion appeared to be "very guarded."[9] The Washington Supreme Court concluded that the trial court misapplied the standard because its ruling "rings of weighing the evidence, not simply determining if it exists."[10]
In her oral ruling, the trial judge here weighed Dr. Barbaree's report against the State's evidence and suggested the State's report was more credible than Young's. She appeared to dismiss Dr. Barbaree's report[11] and rely instead on the State's report, reading portions of it aloud. The sections she read in court discussed Young's allegedly improper behavior at the SCC, including engaging staff in "questionable conversations or interactions," collecting staff telephone numbers, giving a female staff member a rosebud when he should not have done so, sending a female staff member interoffice mail, and making "inappropriate" comments to the SCC staff. The trial court also stated that she considered Young's failure to engage in meaningful treatment for the last several years, which suggested that "nothing had changed." Finally, she appears to weigh Dr. Barbaree's opinion about Young's age against evidence of Young's good physical condition, stating, "[H]e seems pretty healthy [and] I don't know why this age thing makes a difference." Like the oral ruling in Thorell, these comments "ring of weighing the evidence."[12]
An annual show cause hearing is not the proper venue to challenge and weigh the evidence. The State will have an opportunity to challenge Dr. Barbaree's opinion, and a trier of fact will have the opportunity to weigh his opinion against the State's evidence *813 in a proper venuea new commitment hearing. By discounting Dr. Barbaree's opinion and weighing it against the State's evidence, the trial court substituted its judgment for that of Young's expert. Under Petersen and Thorell, the court may only determine whether the evidence, if believed, is prima facie evidence requiring a new evidentiary hearing.

II. Young's Probable Cause Showing
Young presented sufficient evidence to make a prima facie probable cause showing. Like the respondent in Thorell, Young submitted a declaration of a qualified expert. The expert, Dr. Barbaree, stated:
4. ... It is my opinion that, as a result of Mr. Young's relatively advanced age, he no longer meets the definition of a Sexually Violent Predator. Because of his advanced age, he is no longer more likely than not to commit future acts of predatory sexual violence if he is not confined to a secure facility.
5. I hold the opinion contained in my report to a reasonable degree of psychological certainty.
He specifically detailed the reasons for his decision in an eight page report, and he stated that the documents and procedures he used are of a kind reasonably relied on by psychologists completing forensic evaluations. The report included actuarial studies, which "[s]cientific research has consistently shown ... are more accurate than clinical judgments alone in predicting future violence and sex offending among individuals released into the community." One of the actuarial studies included in the report is an assessment of risk based on the "Static-99" Instrument. The Static-99 Table indicated that Young posed a 52 percent likelihood of sexually reoffending within 15 years. But Dr. Barbaree indicated that the actuarial tables distort risk assessments for older offenders because they do not adequately account for the aging process, citing several studies that he and other experts conducted. Based on this research, he concluded, "The ... data clearly show that risk of re-offense among sex offenders is age related, the risk decreases through the life span, and that risk becomes very low at some advanced age, depending on the sex offender group involved. For rapists released after age 60, risk of sexual reoffense seems to be extremely low if not non-existent." The report included a table with suggested age adjustments to the Static-99 actuarial table. Based on the age-adjustment table, the likelihood of recidivism falls below 50 percent at age 35. By age 60, the recidivism rate falls to zero percent. Based on this information, Dr. Barbaree stated, "[A]t age 60, Mr. Young is not likely to sexually re-offend. Certainly, it would be very difficult for the state to argue that, at 60 years of age, Mr. Young's risk for sexual recidivism exceeds 50%."
Dr. Barbaree is a qualified expert in applying actuarial risk analysis and studies on age and recidivism,[13] and his opinions and analyses are endorsed in other experts' scientific literature.[14] He personally interviewed and evaluated Young, reviewed all relevant file materials from the last 12 years, and conducted *814 the Static-99 and age adjustment actuarial analysis. We recognize that it is undisputed among sex offender experts that age is an important factor in determining risk of reoffense, particularly for rapists.[15] And because Dr. Barbaree's opinion about the effect of age on Young's risk of reoffending, if believed, could convince a rational trier of fact that he is no longer more likely than not to engage in predatory acts of sexual violence, Petersen requires a complete evaluation and weighing of Dr. Barbaree's opinion at a new commitment hearing.
We reject the State's argument that because Dr. Barbaree's actuarial age study implicitly suggests Young was never an SVP at all, his assessment is conclusory. First, Dr. Barbaree did not state that Young was never an SVP. Nor does he state that he would have rendered that opinion in 1991. Rather, he presumes Young was an SVP in 1991 and clearly states in his report that Young no longer meets that definition because of his advanced age. The State does not take into account that Young is 12 years older than he was at his original commitment hearing.[16] This is a fact specific to Young and significant to Dr. Barbaree's opinion. The State is free to challenge the effect of Young's aging on his propensity to reoffend and the credibility of the remainder of Dr. Barbaree's assessment at an evidentiary hearing.
The State cites several cases for the proposition that Dr. Barbaree's opinion is not enough to establish probable cause. These are criminal cases[17] and medical malpractice cases in which courts held that affidavits and declarations with conclusions unsupported by relevant facts were insufficient.[18] Those cases are distinguishable because here the actuarial studies on age and recidivism, as well as his personal interview with Young, support Dr. Barbaree's declaration.[19] Because current risk assessment techniques suggest Young is not currently an SVP, denying him a hearing at this point raises due process concerns. The statute requires a periodic assessment of a person committed under RCW 71.09.070 to determine his/her continued dangerousness to the community and to ensure the person continues to meet the criteria for commitment. If current risk assessment techniques suggest Young is not now an SVP, the only adequate way of determining whether Young still meets the criteria for commitment in light of new diagnostic tools is to give him a new commitment hearing.[20] What new scientific studies do or do *815 not show about Young's risk to reoffend in 1991 is not relevant to the ultimate question of whether he is an SVP today.
Young also notes there have been significant changes in risk assessment since 1991, and the actuarial tools Dr. Barbaree used in his assessment were not available when Young was originally committed. We recognize that one of the purposes underlying the sexually violent predator civil commitment statute is to further the understanding and treatment of sex offenders. If there are scientific advances which aid our understanding, courts must take that information into consideration when it is presented in support of a new hearing. That the evidence might have changed the evaluation and outcome in the past does not and should not impact our evaluation of it in the present.
Finally, we address the State's concern that this ruling will permit a person committed under chapter 71.09 RCW to seek and obtain a new evidentiary hearing year after year based solely on a change in age. But, while the detainee continues to age year after year, any change may only be significant after several years have passed. And, as counsel recognized at oral argument, if the detainee does not prevail at a new commitment hearing after full consideration of the effect of aging on his SVP status, he cannot simply raise the same evidence again to obtain a new hearing at his next annual show cause proceeding. It is unlikely that aging one year would be evidence that his condition has "so changed" since his most recent annual review hearing that he is entitled to another hearing on the issue.
Reversed and remanded.
BAKER and APPELWICK, JJ., concur.
NOTES
[1] The initial report was in letter form, based on reviewing 9 documents, 8 of which were over 10 years old, and did not contain any facts about Young other than his age and actuarial scores.
[2] Young does not seek release to a less restrictive alternative.
[3] 145 Wash.2d 789, 797, 42 P.3d 952 (2002).
[4] Id. at 798, 42 P.3d 952.
[5] Id. at 798-99, 42 P.3d 952.
[6] Id. at 799, 42 P.3d 952.
[7] The State characterizes Young's argument as a motion for a new trial, suggesting we should apply the stringent rules found in CR 59. This is not a motion for a new trial based on "newly discovered" evidence. The evidence is an expert evaluation of Mr. Young which is fully cognizable in the statutorily-mandated probable cause hearing under RCW 71.09.090. And, contrary to the State's argument on reconsideration, the SVP statute does not require that a person be "`so changed' through completion of treatment." Motion for Reconsideration at 8. The statute says nothing about treatment as a precondition for a commitment hearing under RCW 71.09.090(2)(c).
[8] Id. at 803, 42 P.3d 952.
[9] Id.
[10] Id.
[11] After discussing the State's report in detail, she stated, "[t]here is nothing before this Court at this time that tells this Court that, anything about [Young's] mental abnormalities or personal disorder, has changed ..." We note that, because Petersen and Thorell had not been decided, there was no case prohibiting the trial court from doing what it did here.
[12] Petersen, 145 Wash.2d at 803, 42 P.3d 952. The State's brief in this case supports this point, as it discusses in detail the alleged inadequacies of Dr. Barbaree's report and attacks his opinion that a person over the age of 35 cannot be a sexually violent predator. These are proper issues to raise at an evidentiary hearing. They do not affect the prima facie case evaluation.
[13] Dr. Barbaree is a professor in the psychiatry department at the University of Toronto and the Clinical Director of the forensic unit at the Center for Addiction and Mental Health in Toronto, which provides both in-patient and out-patient sex offender treatment. He has also authored 22 book chapters and over 50 peer-reviewed journal articles about the assessment, diagnosis, and supervision of sex offenders.
[14] The State seems to suggest that Dr. Barbaree's opinion is inadmissible under ER 702 and ER 403 because he is simply stating that Young was never an SVP. But, at Young's 2001 annual show cause hearing, the trial court determined that Dr. Barbaree's report and declaration were admissible under ER 702 and Frye v. United States, 293 F. 1013 (D.C.Cir.1923). The following scientific literature support this ruling: Sreenivasan et al., Actuarial Risk Assessment Models: A Review of Critical Issues Related to Violence and Sex-Offender Recidivism Assessments, J. of Amer. Acad. of Psychiatry & L., Vol. 28, 438, No. 4 (2000); Hanson, K., Age and Sexual Recidivism: A Comparison of Rapists and Child Molesters, Dep't of Solicitor Gen. Can. (2001); R. Karl Hanson, What Do We Know About Sex Offender Risk Assessment?, 4 Psychol., Pub. Pol'y, & L, 50, 67 (1998); Dickey, R. et al., Age as a Differential Characteristic of Rapists, Pedophiles, and Sexual Sadists, J. of Sex and Marital Therapy, 28: 211-18 (2002). In addition, the trial court did not conclude in the hearing at issue here that Dr. Barbaree's opinion was inadmissible under ER 403.
[15] Young cites Hanson, K., Age and Sexual Recidivism: A Comparison of Rapists and Child Molesters, Dep't of Solicitor Gen. Can. (2001); DSM IV-TR at 568, 704; and Saari, Robert J. and Sullivan Saari, Lynne E., Actuarial Risk Assessment with Elderly Sex Offenders: Should It Be Abandoned?, Sex Offender L. Report (2002).
[16] For this reason, the jury's evaluation of Young's age-based arguments in 1991 and 1993 is not relevant to whether he continues today to meet the definition of a sexually violent predator.
[17] The Washington Supreme Court analogized the probable cause standard in SVP annual review hearings to the Fourth Amendment probable cause standard in criminal cases. See Petersen, 145 Wash.2d at 797, 42 P.3d 952.
[18] State v. Nordlund, 113 Wash.App. 171, 183, 53 P.3d 520 (2002) (search warrant affidavit was insufficient to establish probable cause because it did not contain particularized information demonstrating the required nexus between criminal activity and the item to be seized), review denied, 149 Wash.2d 1005, 70 P.3d 964 (2003); Guile v. Ballard Cmty. Hosp., 70 Wash.App. 18, 25-26, 851 P.2d 689 (1993) (affidavit that merely summarized the patient's complications after surgery and did little more than reiterate the claims made in the plaintiffs complaint was insufficient to defeat the defendants motions for summary judgment), review denied, 122 Wash.2d 1010, 863 P.2d 72 (1993); Vant Leven v. Kretzler, 56 Wash. App. 349, 356, 783 P.2d 611 (1989) (declaration that contained the bare allegations of the pleadings and failed to identify any facts supporting conclusion that doctor fell below the standard of care was insufficient to defeat a motion for summary judgment); State v. Koepke, 47 Wash.App. 897, n. 1, 738 P.2d 295 (1987) (search warrant affidavit was insufficient to establish probable cause because it omitted any facts linking the defendant to the crime).
[19] We acknowledge the State's observation that Dr. Barbaree's 2002 declaration does not discuss any facts derived from that interview. But we note that the interview apparently did nothing to change his opinion. This is a proper issue to pursue on cross-examination at an evidentiary hearing.
[20] See In re Commitment of Pocan, 2003 WI App 233, ¶ 12, 267 Wis.2d 953, 671 N.W.2d 860 (rejecting the State's argument that the court should not consider a detainee's evidence at his annual review hearing that would also establish that he was never an SVP, stating "A new diagnosis would be another way of proving someone is not still a sexually violent person.... [A] new diagnosis focuses on the present. The present diagnosis would be evidence of whether an individual is still a sexually violent person.")