139 P.3d 1140 (2006)
In re the DETENTION of Keith W. ELMORE, Respondent/Cross-Appellant,
v.
STATE of Washington, Appellant/Cross-Respondent.
No. 31769-9-II.
Court of Appeals of Washington, Division 2.
August 8, 2006.
*1142 Todd Richard Bowers, Attorney General, Seattle, WA, for Appellant.
David Schultz, Attorney at Law, Camas, WA, for Respondent.
PENOYAR, J.
¶ 1 Keith W. Elmore has been civilly committed as a sexually violent predator (SVP). The State now appeals from a superior court order granting Elmore a new trial on the issue of whether he continues to meet the definition of an SVP. Elmore cross-appeals the trial court's exclusion of most of his expert's evidence. We hold that Elmore has not shown that he is entitled to a new trial and that portions of his expert's report were properly excluded. Therefore, we reverse.

FACTS

I. BACKGROUND
¶ 2 On October 25, 1994, Elmore pleaded guilty to second degree kidnapping and second degree assault, both with a sexual motivation. According to the police reports, he lured a former coworker to his apartment by telling her that he had a gift for her husband. When she arrived, he put a rope around her neck and told her to take off her clothes. The coworker grabbed the rope to prevent Elmore from pulling too tightly and eventually convinced him to stop choking her. When Elmore went to get the gifts, she fled the apartment.
¶ 3 While in jail at the Twin Rivers Correctional Facility, Elmore participated in sex offender treatment. He was eventually dismissed from the program for lack of progress. As he neared the end of his five-year sentence, the State petitioned to commit Elmore for treatment as an SVP under chapter 71.09 RCW.[1]

II. INITIAL SCC EVALUATION
¶ 4 Elmore was transferred to the Special Commitment Center (SCC) for evaluation. Dr. James Manley prepared the State's report, relying on the evaluations of other professionals. Elmore claimed that he desired to become female and had erotic fantasies about killing and eating a woman in order to absorb her feminine attributes or about skinning a woman to wear her hide. Dr. Manley diagnosed Elmore as suffering from delusional disorder, sexual sadism, gender identity disorder, and a personality disorder not otherwise specified with antisocial features.
¶ 5 Staff at the SCC administered a series of diagnostic tests to determine Elmore's risk for reoffending. The Minnesota Sex Offender Screening Tool-Revised (MnSOSTR) placed him within the low-risk range of recidivism over a six-year period. The Static-99 test score suggested a low to medium risk of recidivism over a fifteen-year period. The Violence Risk Appraisal Guide (VRAG), designed to predict recidivism among violent offenders, suggested that Elmore had an eight percent chance of violently recidivating within ten years. Finally, the Sexual Violence *1143 Risk-20 (SVR-20) tool, which examines 20 dynamic risk factors that have been identified with sexually violent recidivism, determined that Elmore had a very high risk of reoffending.
¶ 6 Based on these assessments, Dr. Manley concluded that Elmore met the criteria as an SVP and recommended that Elmore be placed in a secure setting.

III. DR. WOLLERT'S INITIAL EVALUATION
¶ 7 Elmore retained Dr. Richard Wollert to evaluate him. Dr. Wollert's November 21, 2000 evaluation concluded that Elmore suffered from schizoaffective disorder, a type of schizophrenia. Dr. Wollert disagreed with the diagnosis of sexual sadism, claiming that Elmore did not meet the diagnostic criteria set forth by the American Psychiatric Association.
¶ 8 Dr. Wollert emphasized Elmore's relatively low risk of reoffending based on his Static-99 and VRAG assessments. He also noted that other diagnostic tools such as the Rapid Risk Assessment for Sexual Offender Recidivism (RRASOR), the Psychopathy Checklist-Revised (PCL-R), and the Level of Services Inventory  Revised (LSI-R), all indicated that Elmore was at a low risk for reoffending. Dr. Wollert said:
The great preponderance of weight in making a decision in this case should be based on the actuarial evidence, as 8 studies have thus[ ]far compared the accuracy of actuarial versus clinical judgment for predicting recidivism or parole failure and actuarial judgment was found to be more accurate in all of them.
2 CP at 176.
¶ 9 Dr. Wollert concluded that Elmore was unlikely to reoffend. He recommended that Elmore be placed in a halfway house and continue outpatient treatment.
¶ 10 Elmore did not present Dr. Wollert's report at a commitment hearing but instead stipulated on October 8, 2001, to an order declaring him to be an SVP and committing him for treatment. The order incorporated Dr. Manley's evaluation, but it contained no specific references to Elmore suffering from sexual sadism.
¶ 11 By law, patients at the SCC are entitled to annual reviews of their mental conditions to determine whether they still meet the definition of an SVP. RCW 71.09.070. Elmore's 2002 review was continued so Elmore could get another evaluation from Dr. Wollert. The second report Dr. Wollert submitted, dated November 17, 2003, coincided with Elmore's 2003 annual review. Elmore submitted Dr. Wollert's 2003 report to demonstrate that he no longer met the definition of an SVP.

IV. DR. WOLLERT'S 2003 EVALUATION
¶ 12 After reviewing Elmore's history, Dr. Wollert noted the following as areas where Elmore "may have changed" since commitment: (1) his progress on completing specific treatment milestones and overall treatment progress; (2) his status as to whether he currently suffers from a mental abnormality; and (3) his status as to whether he is more likely than not to commit a sexually violent offense.[2] Dr. Wollert also noted that "an analysis of the expected effects of age on estimated recidivism risk should also be undertaken." 2 CP at 265. He concluded that conditional release to a less restrictive alternative would be in Elmore's best interests and could be done while adequately protecting the community.
¶ 13 As part of his report, Dr. Wollert interviewed Elmore and reviewed Elmore's clinical file. Dr. Wollert noted that Elmore was close to completing phase three and being advanced to phase four of his treatment program. Dr. Wollert also said:
In my experience, outpatient sex offender treatment based on weekly sessions is usually completed within 2 to 4 years. In light of the wide range of projects [Mr.] Elmore has completed, the extent to which [he] as met the specific release criteria. . ., [his] previous 15-month participation in the [sex offender treatment program] at *1144 Twin Rivers, and the length and intensity of [his] treatment experience at the SCC, I believe it would be appropriate to regard [him] as having finished residential treatment.
2 CP at 265-66.
¶ 14 Dr. Wollert went on to dispute the personality disorder diagnosis and to reiterate his conclusion that Elmore does not suffer from sexual sadism. He noted that Elmore does suffer from gender identity disorder and "may be positive" for delusional disorder or the schizoaffective disorder previously diagnosed. 2 CP at 267. However, he noted that none of these three diagnoses has been correlated with sexual recidivism.
¶ 15 Dr. Wollert also said that Elmore's scores on the various actuarial tests had not changed since the date they were administered. He said that the recidivism risk for those with similar convictions decreased by about four percent per year. From this, Dr. Wollert estimated Elmore's current recidivism risk to be about nine percent because Elmore is now two years older than when initially evaluated.
¶ 16 Dr. Wollert concluded by saying that Elmore's "status on various dimensions should be considered to have changed a great deal since [he] was detained and civilly committed. Taken together, these changes converge on the conclusion that [his] risk of sexual recidivism no longer falls above the commitment standard." 2 CP at 270.

V. TRIAL COURT REJECTS DR. WOLLERT'S REPORT
¶ 17 At a March 17, 2004 show cause hearing, the trial court was required to determine whether probable cause existed to warrant a full hearing on whether Elmore's condition had changed. RCW 71.09.090(2)(a). The State relied on the reports Dr. Jason Dunham at the SCC had prepared for Elmore's 2002 and 2003 annual reviews. Both reports concluded that Elmore was cooperating with treatment but that he continued to meet the definition of an SVP. Specifically, Elmore was not addressing the sexual component of his offense but, rather, was continuing to say that the attack was not sexually motivated.
¶ 18 The trial court noted:
Dr. Wollert's November 2003 report opines that Respondent, at this time, does not meet that statutory definition, for four reasons, specifically that Respondent has completed the residential portion of his treatment program, does not, and never did qualify for the diagnoses of sexual sadism and personality disorder not otherwise specified, that his risk to re-offend is less than 50% based on statistical analysis, and the Respondent's increased age reduces his risk to re-offend.
As to the first three reasons, Dr. Wollert's report is insufficient to establish probable cause to believe that Respondent's condition has changed since the order of commitment, so as to remove him from the definition of sexually violent predator.
Dr. Wollert concludes that Respondent has completed residential treatment. He does so, however, by imposing his own "experience" that outpatient sex offender treatment based on weekly sessions is usually completed within two to four years. . . . Notably missing in his opinion is any application of the criteria of the Sexually Violent Treatment Program itself. It is insufficient for Dr. Wollert to opine that Respondent has completed residential treatment at the Special Commitment Center, where the staff at the [SCC] are of the opposite opinion. This is not a case of two differing opinions creating a genuine issue of material fact. The court is not weighing conflicting evidence. Dr. Wollert's opinion that Respondent has completed the program is unsupported by relevant evidence.
2 CP at 278-79 (emphasis in original).
¶ 19 As to the diagnoses of sexual sadism and personality disorder, the trial court found that Dr. Wollert only said that the diagnoses were wrong and remain wrong. "[I]t appears that [Dr. Wollert's] proffered evidence would be that Respondent's correct diagnoses today are the same as they were prior to commitment." 2 CP at 280. The trial court ruled that Elmore had stipulated to the diagnoses underlying his commitment *1145 and so, absent evidence of a change, the stipulation was still binding. "The same can be said of Dr. Wollert's opinion as to likelihood of recidivism based on statistical analysis and testing." 2 CP at 280.
¶ 20 The trial court then referred to the Division One case In re the Detention of Young, 120 Wash.App. 753, 86 P.3d 810 (2004), superseded by statute, RCW 71.09.090, Laws 2005 c 344 § 1. In Young, where the detainee's advancing age affected his risk of reoffending so that he was entitled to a new commitment hearing to determine whether he continued to meet the definition of an SVP. Young, 120 Wash.App. at 762, 86 P.3d 810. The trial court here read Young to mean that Elmore was entitled to a trial on the issue of whether he still meets the statutory definition of an SVP now that he is older than when he was committed. The trial court ruled that Elmore was entitled to a trial on this issue to the exclusion of the other issues Dr. Wollert raised.
¶ 21 The State appeals, claiming that the trial court erred in granting a recommitment trial based solely on Elmore's increase in age. Elmore cross-appeals, claiming that the trial court erred in rejecting Dr. Wollert's non-age based evidence that he no longer meets the statutory definition of an SVP.

ANALYSIS

I. LEGAL RULE
¶ 22 Every person committed at the SCC has the right to petition the court for conditional release to a less restrictive alternative (LRA) or for unconditional discharge. RCW 71.09.090(2)(a). Statute says:
If the [committed] person does not affirmatively waive the right to petition, the court shall set a show cause hearing to determine whether probable cause exists to warrant a hearing on whether the person's condition has so changed that:
(i) He or she no longer meets the definition of a sexually violent predator; or
(ii) conditional release to a proposed [LRA] would be in the best interest of the person and conditions can be imposed that would adequately protect the community.
RCW 71.09.090(2)(a) (emphasis added).
¶ 23 In May 2005, after the trial court ruled in this case, the legislature amended RCW 71.09.090. Laws 2005 c 344 § 4. In its notes, the legislature said it intended to "clarify the `so changed' standard." Laws 2005 c 344 § 1. We therefore read these recent statutory amendments as a clarification of the legislature's intent and not as a substantive change in the law. We use the statute's current version to resolve this case because it expresses the legislature's intent more clearly and completely. See State v. Cooper, 156 Wash.2d 475, 479, 128 P.3d 1234 (2006) (statutory interpretation requires courts to give effect to the legislature's intent and purpose in passing a law).
¶ 24 Probable cause exists to believe that a person's condition has "so changed" only when evidence exists, since the person's last commitment trial proceeding, of a substantial change in the person's physical or mental condition such that the person no longer meets the definition of a sexually violent predator. RCW 71.09.090(4)(a).
A new trial proceeding . . . may be ordered, or held, only when there is current evidence from a licensed professional of one of the following and the evidence presents a change in condition since the person's last commitment trial proceeding:
(i) An identified physiological change to the person, such as paralysis, stroke, or dementia, that renders the committed person unable to commit a sexually violent act and this change is permanent; or
(ii) A change in the person's mental condition brought about through positive response to continuing participation in treatment. . . .
RCW 71.09.090(4)(b).
¶ 25 A change in a single demographic factor, without more, does not establish probable cause for a new trial proceeding. RCW 71.09.090(4)(c). A single demographic factor includes, but is not limited to, a change in the chronological age, marital status, or gender of the committed person. RCW 71.09.090(4)(c).
*1146 ¶ 26 At the show cause hearing, the prosecuting attorney or attorney general must present prima facie evidence establishing that the committed person continues to meet the definition of a sexually violent predator, that an LRA is not in the person's best interest, and that conditions cannot be imposed to adequately protect the community. RCW 71.09.090(2)(b).
¶ 27 The inquiry at the show cause hearing is whether "facts exist" that warrant a full hearing on the merits. In re Detention of Petersen, 145 Wash.2d 789, 796, 42 P.3d 952 (2002). The Statute says:
¶ 28 If the court at the show cause hearing determines that either:
(i) The state has failed to present prima facie evidence that the committed person continues to meet the definition of a sexually violent predator . . .; or
(ii) probable cause exists to believe that the person's condition has so changed that:
(A) The person no longer meets the definition of a sexually violent predator; or
(B) release to a proposed less restrictive alternative would be in the best interest of the person and conditions can be imposed that would adequately protect the community, then the court shall set a hearing on either or both issues.
RCW 71.09.090(2)(c).
¶ 29 The standard of proof at the show cause hearing is "probable cause." Petersen, 145 Wash.2d at 796, 42 P.3d 952. Probable cause exists if the proposition to be proven has been prima facie shown. Petersen, 145 Wash.2d at 797, 42 P.3d 952. The court determines whether the facts (or absence thereof)-if believed-warrant more proceedings. Petersen, 145 Wash.2d at 797, 42 P.3d 952. Courts do not "weigh evidence" to determine probable cause. Petersen, 145 Wash.2d at 798, 42 P.3d 952.
¶ 30 Essentially, a court may determine probable cause to proceed to an evidentiary hearing in one of two ways: (1) by deficiency in the State's proof, or (2) by sufficiency of proof by the committed person. Petersen, 145 Wash.2d at 798, 42 P.3d 952. The State must make out a prima facie case by setting forth evidence that, if believed, shows (1) the committed person still has a mental abnormality or personality disorder, i.e., the committed person has not "so changed;" and (2) this mental abnormality or personality disorder will likely cause the committed person to engage in predatory acts of sexual violence if conditionally released to a LRA or unconditionally discharged. Petersen, 145 Wash.2d at 798, 42 P.3d 952.
¶ 31 The second way to establish probable cause that the committed person's condition has changed is through the patient's own proof. Petersen, 145 Wash.2d at 798, 42 P.3d 952. Even if the State carries its burden to prove a prima facie case for continued commitment, the committed person may present his own evidence which, if believed, would show that (1) the patient no longer suffers from a mental abnormality or personality disorder, i.e., the patient has "so changed;" or (2) if the patient still suffers from a mental abnormality or personality disorder, the mental abnormality or personality disorder would not likely cause the patient to engage in predatory acts of sexual violence. Petersen, 145 Wash.2d at 798, 42 P.3d 952. If the patient makes either showing, there is probable cause that continued commitment is not warranted. Petersen, 145 Wash.2d at 799, 42 P.3d 952.
¶ 32 We review de novo a trial court's legal conclusion of whether evidence meets the probable cause standard. Petersen, 145 Wash.2d at 799, 42 P.3d 952.

II. USE OF AGE TO DETERMINE PROBABLE CAUSE FOR A NEW TRIAL

A. Arguments on appeal
¶ 33 The State argues that commitment as an SVP is indefinite, so trials are not to be held every year. Rather, it claims that a trial should be ordered only when there is probable cause to believe that a person's condition has so changed since commitment that he is no longer an SVP. It claims that this change in "condition" means a change in the underlying mental condition and not simply a change in age.
*1147 ¶ 34 The State urges us to reject Young. In addition to misinterpreting the meaning of "condition," the State claims that the Young court erroneously expanded the scope of the annual review hearing to include claims based on newly discovered scientific evidence.
¶ 35 Elmore responds that age is just one of the many factors that he wanted to present at the review hearing. He claims that the trial court properly found that the reduction in risk flowing from his increase in age was sufficient to establish probable cause that he is no longer an SVP. He argues that "condition" refers to a detainee's mental abnormality that creates a present dangerousness to the community and that the trial court properly considered Dr. Wollert's opinion that age has significantly affected his risk to reoffend. Finally, Elmore argues that due process requires that commitment review procedures permit a detainee to be held only so long as he or she is both mentally ill and dangerous. He claims that the trial court did not err in ordering a new trial because the age evidence showed that he was not presently dangerous.

B. Analysis
¶ 36 The State submitted its brief before the legislature amended RCW 71.09.090. The amendments, which took effect on May 9, 2005, clarified that a change in a demographic factor such as age does not establish probable cause for a new trial. RCW 71.09.090(4)(c). In its notes, the legislature specifically found that Young was contrary to its intent that civil commitment address the "very long term" needs of the SVP population for treatment. Laws 2005 c 344 § 1.
¶ 37 The legislature further determined that:
[T]he mental abnormalities and personality disorders that make a person subject to commitment under chapter 71.09 RCW are severe and chronic and do not remit due solely to advancing age or changes in other demographic factors. . . .
To the contrary, the legislature finds that a new trial ordered under the circumstances set forth in Young and Ward[3] subverts the statutory focus on treatment and reduces community safety by removing all incentive for successful treatment participation in favor of passive aging and distracting committed persons from fully engaging in sex offender treatment.
Laws 2005 c 344 § 1.
¶ 38 Given the amendments to RCW 71.09.090, we hold that the trial court erred in using Elmore's age as a factor in granting him a new trial. The legislature clearly stated that only a change in the underlying mental condition, not a change in a demographic factor, could be a basis for a new trial under RCW 71.09.090(3). RCW 71.09.090(4).

III. REJECTING DR. WOLLERT'S OPINIONS AS A BASIS FOR A NEW COMMITMENT HEARING

A. The evaluations
¶ 39 Elmore claims that, through Dr. Wollert's report, he submitted sufficient evidence to establish probable cause that he no longer meets the definition of an SVP. He claims that the trial court improperly weighed the evidence that Dr. Wollert presented and improperly excluded some of Dr. Wollert's conclusions. Specifically, Elmore claims that the trial court weighed Dr. Wollert's opinion that Elmore had sufficiently progressed in treatment against the SCC staff's opinion that he had not. He asks us to reverse the trial court's decision to exclude most of Dr. Wollert's opinions and remand for a full evidentiary hearing.
¶ 40 Elmore claims that the trial court's exclusions violated his due process rights. He claims that the trial court improperly decided whether he continued to be an SVP based on the merits of each expert's report. He also claims that Dr. Wollert's opinion properly focuses on changes in his condition since commitment.

*1148 B. Analysis

1. Preliminary
¶ 41 We hold that the trial court properly found that Dr. Wollert's report did not create probable cause to believe that Elmore was no longer an SVP. Dr. Wollert himself only recommended supervised residential placement, an LRA, not unconditional release. Whether Elmore qualified for conditional release was already being litigated in other proceedings.
¶ 42 Furthermore, civil commitment as an SVP satisfies due process because a person may only be committed upon a finding that the person is both mentally ill and dangerous. RCW 71.09.020(16), .060(1).

2. Conclusion that Elmore has completed residential treatment
¶ 43 Dr. Wollert does not state sufficient facts to warrant a finding of probable cause to believe that Elmore has completed residential treatment. As Petersen said, facts must exist which, if believed, warrant more proceedings. Petersen, 145 Wash.2d at 797, 42 P.3d 952. The facts that Dr. Wollert states are: (1) Elmore is almost at stage four (out of six) in his treatment program; (2) typical sex offender treatment lasts between two to four years and Elmore has undergone that amount when the 15-month program at Twin Rivers is taken into account; and (3) Elmore has completed a wide range of projects and met some of the specific release criteria.
¶ 44 Elmore being near stage four implicitly acknowledges that he still has more work to do. Furthermore, the amount of time and effort that Elmore has put into treatment does not give probable cause to believe that the treatment was successful so that Elmore is no longer an SVP.

3. Reiterating the initial report

a. Evidence of a different diagnosis
¶ 45 The recent statutory amendments make clear that the relevant focus is on changes since the last commitment trial. RCW 71.09.090(4)(a), (b). The legislative notes for RCW 71.09.090's 2005 amendments stated:
The legislature also finds that, in some cases, a committed person may appropriately challenge whether he or she continues to meet the criteria for commitment. Because of this, the legislature enacted RCW 71.09.070 and 71.09.090, requiring a regular review of a committed person's status and permitting the person the opportunity to present evidence of a relevant change in condition from the time of the last commitment trial proceeding. These provisions are intended only to provide a method of revisiting the indefinite commitment due to a relevant change in the person's condition, not an alternate method of collaterally attacking a person's indefinite commitment for reasons unrelated to a change in condition. Where necessary, other existing statutes and court rules provide ample opportunity to resolve any concerns about prior commitment trials. Therefore, the legislature intends to clarify the "so changed" standard.
Laws 2005 c 344 § 1.
¶ 46 We interpret these notes to mean that evidence questioning a past diagnosis is not in and of itself sufficient to establish probable cause that a detainee's condition has changed. Instead, the trial court should focus on changes since commitment. Therefore, we hold that Dr. Wollert's disagreement with the diagnoses of personality disorder and sexual sadism does not establish probable cause for a new hearing. This information was available for Elmore to present at his initial commitment hearing. Because he chose not to do so and stipulated to the State's expert's report instead, we hold that he cannot now collaterally attack that initial report on appeal.[4] Instead, he must focus on how he has changed through treatment.

b. Actuarial evidence
¶ 47 The same is true for Dr. Wollert reiterating his initial conclusion that the actuarial *1149 evidence from the different tests does not support civil commitment. As Dr. Wollert notes, the results of Elmore's scoring have not changed. Because this was the same evidence that was available at the initial commitment hearing, we hold that the trial court properly discounted it as evidence of change warranting a new trial.

CONCLUSION
¶ 48 Because Elmore has not presented sufficient evidence that his condition has changed, and because the State met its burden of demonstrating that Elmore is still an SVP, we hold that Elmore is not entitled to a new trial at this time.
We concur: HOUGHTON, P.J., ARMSTRONG, J.
NOTES
[1] According to the definitions in RCW 71.09.020:

(16) "Sexually violent predator" means any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility.
(15) "Sexually violent offense" means . . . (c) an act of . . . assault in the first or second degree, [or] . . . kidnapping in the first or second degree, . . . which act, . . . has been determined beyond a reasonable doubt to have been sexually motivated.
(8) "Mental abnormality" means a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others.
(7) "Likely to engage in predatory acts of sexual violence if not confined in a secure facility" means that the person more probably than not will engage in such acts if released unconditionally from detention on the sexually violent predator petition.
[2] In 2002, Elmore obtained a court order legally changing his first name to Rebecca. Apparently he prefers the female pronoun as well. Because the caption still uses the male name, we continue to use that name and the male pronoun for the sake of consistency.
[3] In re the Matter of the Detention of Ward, 125 Wash.App. 381, 104 P.3d 747 (2005), superseded by statute, RCW 71.09.090, Laws 2005 c 344 § 1.
[4] Even if Elmore had not stipulated to the State's report, he would still be bound if the trial court had found for the State after an adversarial hearing.