[No. 56604-1-I. Division One. February 20, 2007.]

*In the Matter of the Detention of* KIM SMITH, *Appellant,* THE STATE OF WASHINGTON, *Respondent.*

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellant.

*Robert M. McKenna, Attorney General,* and *Todd R. Bowers, Assistant,* for respondent.

¶1 BECKER, J. — Kim Smith was committed in 2002 as a sexually violent predator. Like the detainee in this court's decision in *In re Detention of Young*,[1] Smith sought release on the basis of evidence that the increase in his age rendered him unlikely to commit acts of sexual violence. Consistent with *Young*'s interpretation of the commitment statute, the trial court ordered a trial on whether Smith was entitled to release. Before trial, the legislature amended the commitment statute. Under the amended version, courts are no longer allowed to hold new commitment trials when the only evidence to justify such a trial was evidence that the detainee had gotten older. Applying the new statute, the court struck the trial. Smith contends this was a retroactive application in violation of the separation of powers doctrine. But Smith has failed to show that the amendment—which bars future trials—was retroactively applied in his case. We affirm.

---

[1] *In re Det. of Young*, 120 Wn. App. 753, 762, 86 P.3d 810, *review denied*, 152 Wn.2d 1035 (2004).

## FACTS

¶2 Smith, convicted of kidnapping and robbery in 1975 and rape in 1991, was scheduled for release from prison in May 2000. The State petitioned to have him committed to the custody of the Department of Social and Health Services (Department) as a sexually violent predator. After a bench trial on the petition in March 2002, a trial court ordered Smith's commitment. He was just short of 50 years old at that time.

¶3 A sexually violent predator is a "person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(16). The Department must conduct a yearly mental examination of each person detained as a sexually violent predator and file those reports with the court that committed the detainee. RCW 71.09.070.

¶4 This case concerns a 2005 amendment to RCW 71.09-.090, the section governing procedures by which persons detained as sexually violent predators may gain release. Except for the new section added in 2005, this section of the statute has remained largely the same at all relevant times.

¶5 Subsection 1 gives the secretary of the Department the ability to authorize a detainee to petition the court for release. The secretary's authorization automatically entitles a detainee to a new commitment trial.

¶6 Subsection 2 gives detainees the right, even without the secretary's authorization, to petition for unconditional release and to receive notice of this right each year. RCW 71.09.090. When the detainee does not affirmatively waive the right to petition, the court must set a show cause hearing to determine whether probable cause exists to warrant a hearing on whether the detainee's condition has "so changed" that he no longer meets the definition of a sexually violent predator. RCW 71.09.090(2)(a). At the show cause hearing, the State "shall present prima facie evidence

establishing that the committed person continues to meet the definition of a sexually violent predator." RCW 71.09-.090(2)(b). The detainee "may present responsive affidavits or declarations to which the state may reply." RCW 71.09-.090(2)(b). If the court determines, without weighing the evidence,[2] that probable cause exists to believe the detainee's condition is "so changed" that he no longer meets the definition of a sexually violent predator, "then the court shall set a hearing" on that issue. RCW 71.09.090(2)(c). This hearing is also referred to as a trial.

¶7 Subsection 3 governs the procedures to be followed at a trial ordered under subsection 1 or 2. At the trial, the detainee and the State have the right to a jury. The State has the burden of proving beyond a reasonable doubt that the detainee continues to meet the definition of a sexually violent predator and that a less restrictive alternative is inappropriate. RCW 71.09.090(3)(b).

¶8 When appellant Kim Smith was committed in 2002, the statute did not define the term "so changed" and did not place any limits on the types of changes in the detainee's condition that could justify a new commitment trial.

¶9 In August 2003, the court conducted a show cause hearing and did not find probable cause to believe Smith was no longer a sexually violent predator. Smith remained in custody.

¶10 In March 2004, this court decided the case of *In re Detention of Young*, 120 Wn. App. 753. A psychologist offered an opinion that the detainee's advanced age meant he was no longer likely to commit acts of predatory sexual violence. The opinion was based on actuarial risk assessment. We held the opinion sufficient to show probable cause warranting a new commitment trial.

¶11 Meanwhile, in the course of the Department's 2004 review of Smith's status, the Department's expert concluded Smith remained a sexually violent predator and that he was unfit for release to a less restrictive alternative. In

---

[2] *In re Det. of Petersen*, 145 Wn.2d 789, 797, 42 P.3d 952 (2002).

April 2004, after receiving the Department's review, Smith exercised his annual right to petition for release. In May 2004, he retained psychologist Dr. Luis Rosell. Dr. Rosell examined Smith and concluded that he, like the detainee in *Young*, no longer met the definition of a sexually violent predator. Dr. Rosell relied for this conclusion upon the fact that Smith, 52 years old at the time of the examination, had been incarcerated for over 14 years since his last offense. According to Dr. Rosell, research conducted since Smith's commitment showed that for sex offenders, including rapists, the risk of recidivism decreases as the offender ages.[3]

¶12 At the show cause hearing in October 2004, Smith cited *Young* and provided Dr. Rosell's report to the trial court as evidence that he had so changed as to no longer be a sexually violent predator. The State conceded that Dr. Rosell's report supplied probable cause justifying a new trial. The court ordered a trial.[4]

¶13 In March 2005, after taking Dr. Rosell's deposition, the State moved to vacate the order for trial. The State contended that Dr. Rosell's opinions were not supported by facts.

¶14 The court had not yet ruled on the State's motion when, in May 2005, a newly enacted statute amending RCW 71.09.090 went into effect. The 2005 amendment is the focus of this appeal. The legislature found that *Young* and another somewhat similar decision had interpreted RCW 71.09.090 contrary to legislative intent. The amendment was intended to clarify the "so changed" standard in the wake of those decisions:

> The legislature finds that the decisions in *In re Young*, 120 Wn. App. 753, *review denied*, [152] Wn.2d [1035] (2004) and *In re Ward*, [125] Wn. App. [381] (2005) illustrate an unintended consequence of language in chapter 71.09 RCW.

> The *Young* and *Ward* decisions are contrary to the legislature's intent set forth in RCW 71.09.010 that civil commitment

---

[3] Clerk's Papers (CP) at 449-50.

[4] Report of Proceedings (Oct. 28, 2004) at 4.

pursuant to chapter 71.09 RCW address the "very long-term" needs of the sexually violent predator population for treatment and the equally long-term needs of the community for protection from these offenders. The legislature finds that the mental abnormalities and personality disorders that make a person subject to commitment under chapter 71.09 RCW are severe and chronic and do not remit due solely to advancing age or changes in other demographic factors.

The legislature finds, although severe medical conditions like stroke, paralysis, and some types of dementia can leave a person unable to commit further sexually violent acts, that a mere advance in age or a change in gender or some other demographic factor after the time of commitment does not merit a new trial proceeding under RCW 71.09.090. To the contrary, the legislature finds that a new trial ordered under the circumstances set forth in *Young* and *Ward* subverts the statutory focus on treatment and reduces community safety by removing all incentive for successful treatment participation in favor of passive aging and distracting committed persons from fully engaging in sex offender treatment.

The *Young* and *Ward* decisions are contrary to the legislature's intent that the risk posed by persons committed under chapter 71.09 RCW will generally require prolonged treatment in a secure facility followed by intensive community supervision in the cases where positive treatment gains are sufficient for community safety. The legislature has, under the guidance of the federal court, provided avenues through which committed persons who successfully progress in treatment will be supported by the state in a conditional release to a less restrictive alternative that is in the best interest of the committed person and provides adequate safeguards to the community and is the appropriate next step in the person's treatment.

The legislature also finds that, in some cases, a committed person may appropriately challenge whether he or she continues to meet the criteria for commitment. Because of this, the legislature enacted RCW 71.09.070 and 71.09.090, requiring a regular review of a committed person's status and permitting the person the opportunity to present evidence of a relevant change in condition from the time of the last commitment trial proceeding. These provisions are intended only to provide a

method of revisiting the indefinite commitment due to a relevant change in the person's condition, not an alternate method of collaterally attacking a person's indefinite commitment for reasons unrelated to a change in condition. Where necessary, other existing statutes and court rules provide ample opportunity to resolve any concerns about prior commitment trials. Therefore, the legislature intends to clarify the "so changed" standard.

LAWS OF 2005, ch. 344, § 1.

¶15 The 2005 statute did not alter the underlying framework in which the detainee has the right to a new trial if there is prima facie evidence that he had "so changed" as to no longer meet the description of a sexually violent predator. The 2005 statute added a new subsection, subsection 4, articulating what is necessary to satisfy the "so changed" standard and listing certain types of evidence that do not satisfy it. As amended in 2005, the statute now states that change in age alone is insufficient:

(4)(a) Probable cause exists to believe that a person's condition has "so changed," under subsection (2) of this section, only when evidence exists, since the person's last commitment trial proceeding, of a substantial change in the person's physical or mental condition such that the person either no longer meets the definition of a sexually violent predator or that a conditional release to a less restrictive alternative is in the person's best interest and conditions can be imposed to adequately protect the community.

(b) A new trial proceeding under subsection (3) of this section may be ordered, or held, only when there is current evidence from a licensed professional of one of the following and the evidence presents a change in condition since the person's last commitment trial proceeding:

(i) An identified physiological change to the person, such as paralysis, stroke, or dementia, that renders the committed person unable to commit a sexually violent act and this change is permanent; or

(ii) A change in the person's mental condition brought about through positive response to continuing participation in treatment which indicates that the person meets the standard for

conditional release to a less restrictive alternative or that the person would be safe to be at large if unconditionally released from commitment.

(c) For purposes of this section, a change in a single demographic factor, without more, does not establish probable cause for a new trial proceeding under subsection (3) of this section. As used in this section, a single demographic factor includes, but is not limited to, a change in the chronological age, marital status, or gender of the committed person.

RCW 71.09.090(4). The State notified the trial court of this change in the law in June 2005, one month before Smith's trial was scheduled to begin.

¶16 After hearing argument on the applicability of the 2005 statute, the court found that Smith was alleging a change in his condition predicated upon the advance in his age.[5] The court concluded the new subsection applied to bar trial on Smith's petition because the statute now "specifically indicates that trial may be ordered, *or held,* only where the specific articulated requirements are met."[6] Accordingly, the court struck the trial.

¶17 Smith appeals. He contends that because the 2005 amendment overrules this court's holding in *Young,* giving it retroactive effect is a violation of the separation of powers doctrine.

■ ¶18 The constitutional separation of powers doctrine "prevents the legislature from effecting a retroactive change in the law that contravenes this court's construction of the original statute." *In re Pers. Restraint of Stewart,* 115 Wn. App. 319, 342, 75 P.3d 521 (2003).

¶19 The State suggests we can sidestep the retroactivity issue and reject Smith's appeal on the basis that the discussion in *Young* about aging was dicta, not a genuine holding construing the original statute. This is incorrect. While one reason for reversal in *Young* was that the trial court had impermissibly weighed the evidence at the prob-

---

[5] CP at 13 (Finding of Fact 4).

[6] CP at 14 (Conclusion of Law 3).

able cause hearing, that reason alone would not support our holding that the detainee was entitled to a new trial as a matter of law. Necessary to that outcome was our conclusion that an expert's opinion based on increased age of the detainee was sufficient evidence to require a new commitment trial. That conclusion was a holding, not dicta, and it is contravened by the 2005 statute.

¶20 The legislature is free to amend a statute in a way that contravenes a judicial construction of the original statute so long as the change does not operate retroactively. Does the 2005 statute operate retroactively because the trial court used it as a basis for striking Smith's trial, a trial that would have gone forward under *Young*'s interpretation of the original statute? The State regards it as self-evident that since the 2005 statute prevents trials from being ordered "or held," and since Smith's trial had not yet been held when the statute went into effect, the operation of the statute is prospective. Smith, however, regards it as equally self-evident that the statute does operate retroactively because before it passed he had the right to go to trial and now he does not.

¶21 "While statutory retroactivity has long been disfavored, deciding when a statute operates 'retroactively' is not always a simple or mechanical task." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 268, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994).

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.

*Landgraf*, 511 U.S. at 269-70 (footnote and citation omitted).

¶22 The briefs of the parties are largely unhelpful, as they do not attempt to compare Smith's situation to the facts of any other cases in which courts have had to decide whether a statute operates retroactively. In some cases, courts have determined whether a statute operates prospectively by identifying the precipitating event that triggers the operation of the statute. *See, e.g., In re Estate of Burns*, 131 Wn.2d 104, 112, 928 P.2d 1094 (1997); *accord State v. Pillatos*, 159 Wn.2d 459, 470-72, 150 P.3d 1130 (2007). The parties have not attempted this mode of analysis, and accordingly neither have we.

¶23 We also find no guidance in Division Two's recent decision applying the 2005 statute to reverse an order granting a new trial where the order was based on a single change in a demographic factor. *In re Det. of Elmore*, 134 Wn. App. 402, 413, 139 P.3d 1140 (2006), *mot. for discretionary review granted*, 158 Wn.2d 1025 (2007). There is no indication in *Elmore* that the court was asked to decide whether the 2005 enactment operated retroactively when applied as a bar to a previously ordered trial.

¶24 Courts recognize that a statute may be retroactive, even if not explicitly worded to have retroactive effect, if it affects vested rights and past transactions. *Landgraf*, 511 U.S. at 268-69. Thus, while it may be self-evident that the legislature intended the new criteria introduced by the 2005 statute to apply only to future scheduling or holding of trials, that is not necessarily sufficient to dispose of Smith's appeal.

¶25 Our Supreme Court has summarized *Landgraf* as holding that "a statute has a genuinely retroactive effect if it impairs rights a party possessed when he acted, increases his liability for past conduct, or imposes new duties with respect to completed transactions." *Burns*, 131 Wn.2d at 110. Smith has not identified any previous action that he has taken in reliance on the previous statute or by which he acquired a right that might be described as vested. The pre-2005 version of RCW 71.09.090 as interpreted by *Young* permitted him to have a release trial solely because he had

330

grown older. Growing older did not require any activity on his part. Smith also has not argued that the statute increases his liability for past conduct or that it imposes new duties with respect to completed transactions.

¶26 A vested right, entitled to protection from legislation, " 'must be something more than a *mere expectation* based upon an anticipated continuance of the existing law.' " *Burns*, 131 Wn.2d at 116 n.2 (quoting *Lawson v. State*, 107 Wn.2d 444, 455, 730 P.2d 1308 (1986)). Smith expected a new commitment trial based solely on his anticipation that the criteria for release in RCW 71.09.090 would not change. This mere expectation does not give him a vested right in the pre-2005 version of the law.

¶27 We conclude the 2005 statute did not operate retroactively when the trial court used it as a basis for striking Smith's trial. Therefore, the legislature's decision to contravene this court's construction of the original statute does not violate the separation of powers doctrine.

¶28 Affirmed.

SCHINDLER, A.C.J., and GROSSE, J., concur.

After modification, further reconsideration denied April 4, 2007.